In the Matter of the Contested Case of
**LUTHER HAVEN NURSING HOME,
MONTEVIDEO, MINNESOTA, Relator,**

v.

**MINNESOTA DEPARTMENT OF
HUMAN SERVICES,
Respondent.**

No. C2–88–3.

Court of Appeals of Minnesota.

May 31, 1988.

Samuel D. Orbovich, Broeker, Geer, Fletcher & Lafond Limited, Bloomington, for relator.

Hubert H. Humphrey, III, Atty. Gen., John L. Kirwin, Sp. Asst. Atty. Gen., St. Paul, for respondent.

Heard and considered by CRIPPEN, P.J., and SCHULTZ and FLEMING, JJ.*

## OPINION

CRIPPEN, Judge.

Relator Luther Haven Nursing Home appeals by writ of certiorari from a contested case decision of the Commissioner of the Department of Human Services that the nursing home is not a "hospital-attached nursing home" for purposes of rate-setting under Minn.Rules 9549.0020 subp. 26 (1985). The case is governed substantially by our holding in *St. Otto's & St. Francis' Nursing Homes v. Minnesota Department of Human Services*, 425 N.W.2d 252 (Minn. Ct.App.1988), and our decision should be read concurrently with the opinion in that matter.

## FACTS

Luther Haven is a nonprofit corporation operating a Montevideo nursing home which participates in the state's medical assistance program. Prior to 1972, the home was a free-standing facility. In 1972, Luther Haven received approval for an expansion. Approval was conditioned upon its willingness to share services with a new Chippewa County–Montevideo hospital planned by the County and the City. In return, the City agreed to finance the nursing home's expansion and to retire existing debt on the home by issuing revenue bonds. To obtain this financing, Luther Haven conveyed the nursing home buildings and land to the City and the City leased them back to the home for a term of 25 years; rental payments covered the principal, interest and other costs of the revenue bonds. The sale and leaseback transaction was treated as a financing arrangement in Luther Haven's audit reports.

Attached by a tunnel, the hospital and nursing home are part of one medical complex. The hospital is owned equally by the County and the City. Although the City is the fee owner of the nursing home's build-

ings and the land they are built on, Luther Haven has sole possession of the property under the lease.

The hospital and nursing home operate a joint facility. They share a boiler, water softener, staff dining, dietary, laundry, garage, air-conditioning, garbage, materials management, employee lockers, connecting links, employee parking lot, joint nurses' educational program, and joint employee appreciation events. No service changes or additional construction is to be made without consultation between them. They retain a cost accountant to determine how the costs of shared services and facilities should be allocated between them. The nursing home's audited financial reports contain its share of costs of service areas it shares with the hospital. The costs of those shared service areas are based on allocations (stepdowns) approved by the Medicare program and used by Medicare to establish the hospital's rates. The hospital and nursing home have separate boards, but each board has a shared services committee.

Prior to November 1, 1985, Luther Haven was considered a hospital-attached nursing home and received payments according to that rate. Luther Haven challenged the loss of that status in a contested case proceeding. The Department of Human Services moved for summary disposition on the grounds that Luther Haven Nursing Home was not commonly owned and operated with Chippewa County–Montevideo Hospital under the definition in Minn.Rule 9549.0020 subp. 26. The administrative law judge decided Luther Haven was not under common ownership with the hospital but denied summary disposition on the issue of common operation. The Commissioner then modified the judge's order by deciding Luther Haven and the hospital were not commonly operated. Luther Haven appeals the Commissioner's order through a writ of certiorari.

## ANALYSIS

This court shall review the commissioner's decision under Minn.Stat. § 14.69

* Acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. 6, § 2.

(1986). The agency's decision is accorded a "presumption of correctness." *Reserve Mining Co. v. Herbst,* 256 N.W.2d 808, 824 (Minn.1977). Here, Luther Haven argues that summary disposition of this case is inappropriate because, while there are no disputed facts, it is not clear whether the facts show "common ownership and operation" under Minn.Rule 9549.0020 subp. 26 (1985). *See* Minn.R. 1400.5500 K (1985).

### 1. Common ownership

■ Luther Haven bases its claim for common ownership on the City of Montevideo's fee ownership of the land and buildings the nursing home uses and the City's one-half interest in the hospital. Luther Haven notes that "nursing home" is defined as "a facility licensed under Minnesota Statutes chapter 144A." Minn.Rule 9549.0020, subp. 31. Luther Haven argues that the word "facility" as used in various licensing provisions includes the land and buildings where the nursing home is located. *See* Minn.Stat. § 144A.01, .02 (1985).

Rejecting the argument that facility refers to the land and buildings, the Commissioner found that the nursing home is a business entity and the business, not the land and buildings, provides the nursing care. The Commissioner reasoned that "a mere legal interest in the land and building in which a nursing home business is carried on, does not, without more, constitute ownership of a nursing home." In addition, the Commissioner concluded that the transaction giving the City fee title to the land and buildings was really a financing arrangement securing rights over the property in order to protect the bond holders. *See Gilliland v. Port Authority of City of St. Paul,* 270 N.W.2d 743, 746 (Minn.1978). The Commissioner noted:

> All excess revenue bond funds are payable to Luther Haven, who is also required to pay all deficiencies in the construction fund, all taxes and assessments on the property, all insurance costs, and all utility expenses. Moreover, Luther Haven is required to make any necessary repairs and is authorized to alter the plant and to erect additional buildings. In addition, while the City is not authorized to sell its interest in the land, Luther Haven is permitted to sublease the property and it has sole authority to possess the nursing home and use it for its own purposes.

The Commissioner had sufficient evidence to support a finding that the City was an equitable mortgagee rather than an owner of the nursing home.

As further support for finding no common ownership, the Commissioner adopted the part of the administrative law judge's order requiring the filing of a combined Medicare report to find common ownership. *See St. Otto's & St. Francis' Nursing Homes v. Minnesota Department of Human Services,* 425 N.W.2d 252 (Minn.Ct. App.1988).

### 2. Common Operation

■ Luther Haven argues that "common operation" has historically meant the sharing of services and the adoption of Minn. Rule 9549.0020 does not change that. However, the amendment of the rules in 1983 deleted language defining common operation as the sharing of services and replaced it with a requirement for common operation *and* the sharing of services. The Commissioner noted that "operation" has acquired a special technical meaning in the business context and since the nursing home was a business, the business definition would be applied. The Commissioner then found that "common operation" required organizational integration of a hospital and a nursing home from an accounting, administrative and functional viewpoint.

In applying this definition to Luther Haven, the Commissioner stated:

> Luther Haven and the hospital operated as separate businesses with separate boards of directors. Each board has a "shared services committee," which confer and agree on shared services and facilities. Shared services committees, however, are not sufficient to constitute common operation.

Evidence in the record supported the Commissioner's decision. Giving considerable

deference to the agency, it was not error for the Commissioner to conclude that the nursing home and hospital were not commonly operated.

3. Evidence

 Luther Haven argues that the administrative judge and the Commissioner incorrectly relied on a department-commissioned study quoted in the adoption of Minn.Rules 9549.0010–.0080 and not expressly made part of the record of this case. Luther Haven objects to the reliance on this study in concluding that only nursing homes filing "combined" Medicare reports qualify as "hospital-attached." The department argues that the quotation is part of the rule-making history of Minn. Rule 9549.0010–.0080 and may be considered by the judge and Commissioner.

As reported in *St. Otto's & St. Francis' Nursing Homes v. Minnesota Department of Human Services,* there is other evidence supporting the Commissioner's requirement of combined Medicare reports for hospital-attached status. A discussion of uniform cost reporting relating to Medicare appears elsewhere in the record as does a rate notice of the Federal Health Care Financing Administration. Reliance on this study does not rise to the level of prejudicial error requiring a rehearing.

4. Equal protection

Luther Haven argues that the Commissioner's interpretation of the rule violates the equal protection clause of the United States Constitution. This argument is tied to Luther Haven's argument that the commissioner improperly required "business integration," substantial sharing of services, and a combined medicare report. Following the analysis of this issue in *St. Otto's & St. Francis' Nursing Homes v. Minnesota Department of Human Services,* the Commissioner's denial of hospital-attached status to relator does not amount to a denial of equal protection.

## DECISION

We affirm the commission's denial of hospital-attached status to Luther Haven

because the Commissioner properly interpreted Minn.Rule 9549.0020 and the evidence was sufficient to support his decision of no common ownership or operation.

Affirmed.